## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

CASE NO.: 9:16-cv-80609

LAYNE HEAVY CIVIL, INC.
f/k/a REYNOLDS, INC.

      Plaintiff,

v.

CARTER & VERPLANCK, INC.

      Defendant.

## COMPLAINT

Plaintiff, Layne Heavy Civil, Inc., formerly known as Reynolds, Inc. ("LHC") brings this Complaint against Defendant Carter & Verplanck, Inc. ("Carter Verplanck") to compensate LHC for damages sustained as a result of its delivery of non-conforming goods to a water treatment project located in Palm Beach County, Florida. LHC also seeks to establish Carter Verplanck's liability under the parties' Purchase Order while seeking a declaratory judgment that Carter Verplanck is responsible for all current and future penalties assessed and damages incurred by LHC as a result of the project's delayed completion. In support of its Complaint LHC alleges as follows:

### THE PARTIES

1.    LHC is an Indiana corporation with a principal place of business at 1800 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas 77380.

2. LHC is a national construction company that provides design and build services for water and wastewater treatment facilities and pipeline installation. Serving government agencies and industrial clients, LHC focuses on the construction and installation of potable and wastewater infrastructure. LHC is registered to conduct business in Florida.

3. Formerly known as Reynolds, Inc., Reynolds was acquired by Layne Christensen and changed its name to Layne Heavy Civil, Inc. in 2012.

4. Carter Verplanck is an active Florida corporation with its principal place of business at 4910 West Cypress Street, Tampa, Florida 33607.

5. In business since 1927, Carter Verplanck is a supplier of water pumps and other specialty equipment. As a provider of products and process lines for the water and wastewater treatment industries, Carter Verplanck holds itself out as an expert in the supply and sale of highly specialized and engineered pumps and related equipment. Carter Verplanck supports process lines with pumps, motors, valves, variable speed drives, and control systems, while operating "a full-service company that expertly guides clients through the entire lifecycle of a project ─ starting with design and engineering, continuing through installation and start-up, and enduring with ongoing field support."

## JURISDICTION AND VENUE

6. Jurisdiction is proper because there is complete diversity of citizenship between LHC and Carter Verplanck and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to the claim occurred within this judicial district and Carter Verplanck is subject to personal jurisdiction within this judicial district.

## FACTS COMMON TO ALL ALLEGATIONS

### A. Project Background

8. LHC incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set out herein.

9. LHC serves as the General Contractor on a significant water treatment project located in Palm Beach County, Florida ("the Project").

10. The Project is owned by Seacoast Utility Authority ("SUA"), and consists of two principal components: (1) construction of a new membrane water treatment plant; and (2) the rehabilitation/construction of three booster or "repump" stations, which operate to supply groundwater to the new water treatment plant.

11. SUA is a non-profit conglomerate governmental regional water and wastewater utility that furnishes potable water and sewer service and comprises several municipalities and certain unincorporated areas located in northern Palm Beach County, Florida.

12. On April 12, 2010, Carter Verplanck entered into multiple contracts with LHC whereby Carter Verplanck would supply large vertical turbine pumps for both the membrane plant and the repump stations. A true and correct copy of the principal LHC-Carter Verplanck purchase order is attached hereto and fully incorporated herein by reference as **Exhibit A**.

13. Pursuant to the LHC-Carter Verplanck contract, Carter Verplanck promised, among other things, that the pumps it supplied would conform to the technical requirements and specifications of the Project.

14. LHC relied on Carter Verplanck's stated expertise in its provision of pumps that would conform to the Project specifications.

15. Carter Verplanck was provided a complete set of all relevant technical specifications and requirements for the Project's pumps.

### B. Carter Verplanck Supplies Non-Conforming Pumps

16. Carter Verplanck supplied the pumps for the membrane water treatment plant first. After installation of the pumps for the membrane water treatment plant, LHC and SUA tested their performance and conformity to the Project specifications.

17. A vibration test was required before SUA and its engineers would accept the pumps.

18. The pumps supplied by Carter Verplanck for the membrane treatment plant failed the vibration tests, and SUA would not accept them as a result.

19. The pumps supplied by Carter Verplanck for one of the repump stations were subsequently installed and, they too, failed the requisite vibration tests. SUA also refused to accepts these pumps.

20. Carter Verplanck (and/or the pump manufacturer) then expended months attempting to address the problems and mitigate the unacceptable vibrations. The severity of the problems resulted in shipment of the pumps back to the manufacturer for substantial modification and stiffening of the pump and motor assemblies.

21. The vibrations were eventually reduced to acceptable levels, resulting in SUA's acceptance of the modified versions of the pumps.

### C. Carter Verplanck's Non-Conforming Pumps Delayed the Project

22. The installation, testing, and acceptance of the Carter Verplanck pumps were items on the Project's "critical path."

23. The delay caused by Carter Verplanck's non-conforming pumps significantly delayed the Project, including, but not limited to, the awarding of substantial completion for the membrane treatment plant.

24. The delay caused by Carter Verplanck's non-conforming pumps also delayed completion of the repump stations, which further impacted and delayed the entire Project.

25. SUA has asserted a claim against LHC for damages attributable to the delay in the Project's completion. In particular, SUA has asserted that LHC is responsible for approximately $600,000.00 in delay-based damages as a result of the delay in substantial completion of the membrane treatment plant.

26. LHC is in jeopardy of having further delay-based damages asserted against it by SUA in relation to the Project's final completion.

27. In addition to SUA's delay-based damages, LHC suffered direct damages and increased costs caused by Carter Verplanck's non-conforming pumps and related delay.

28. LHC has been required to retain undersigned counsel in this matter and agreed to pay counsel a reasonable fee for their services.

29. All conditions precedent to the commencement of this action have occurred or been waived.

## COUNT I
## BREACH OF CONTRACT

30. LHC repeats and realleges each and every allegation of Paragraphs 1 through 29 above, as if set forth herein.

31. Carter Verplanck and LHC entered into a valid, binding, and enforceable agreement.

32. LHC performed and/or stood ready to perform all of its contractual obligations.

33. Paragraph 6 of the Standard Terms and Conditions to the Purchase Order provides in relevant part goods/services "shall strictly conform to all applicable requirements and standards prescribed by this order and the Contract Documents. . . Goods/Services not conforming to such requirements shall be considered defective. This warranty shall be in addition to and not in limitation of any other warranty or remedy existing under applicable law or the Prime Contract, including but not limited to implied warranties of merchantability and fitness for a particular purpose contemplated by this order. All deliveries are subject to [LHC's] right of inspection and rejection, which may occur at any time prior to completed installation and incorporation of goods into [LHC's] work for the Project."

34. The Purchase Order Scope of Work (PO: 10038-022R) expressly provides that "Materials and equipment are to be furnished and fabricated in the best manner of industry and trade practices and as specified and detailed to accomplish project requirements."

35. Carter Verplanck breached the agreement by supplying pumps and/or equipment that failed to satisfy the Project's requirements and/or specifications.

36. Carter Verplanck's breach has caused LHC to suffer harm and subjected LHC to further potential liability.

37. Paragraph 8 of the Standard Terms and Conditions of the parties' agreement expressly provides that remedies for breach shall be in accordance with the Florida Uniform Commercial Code.

WHEREFORE, LHC prays for judgment against Carter Verplanck in an amount to be proven at trial, together with interest thereon at the highest rate allowed by law, and such other and further relief as the Court deems appropriate.

## COUNT II
## BREACH OF EXPRESS WARRANTY

38. LHC repeats and realleges each and every allegation of Paragraphs 1 through 29 above, as if set forth herein.

39. Paragraph 6 of the Standard Terms and Conditions to the Purchase Order provides in relevant part goods/services "shall strictly conform to all applicable requirements and standards prescribed by this order and the Contract Documents. . . Goods/Services not conforming to such requirements shall be considered defective. This warranty shall be in addition to and not in limitation of any other warranty or remedy existing under applicable law or the Prime Contract, including but not limited to implied warranties of merchantability and fitness for a particular purpose contemplated by this order."

40. The Purchase Order Scope of Work (PO: 10038-022R) expressly provides that "Materials and equipment are to be furnished and fabricated in the best manner of industry and trade practices and as specified and detailed to accomplish project requirements."

41. Carter Verplanck knew the purpose for which the pumps were intended and expressly warranted that the pumps would conform to the Project specifications.

42. LHC relied upon the skill, expertise, superior knowledge and judgment of Carter Verplanck to supply pumps in conformance with the Project specifications.

43. Carter Verplanck breached its express warranties by supplying non-conforming pumps and related equipment that failed to satisfy the Project's requirements and specifications.

44. As a direct and proximate result of Carter Verplanck's breach of express warranties, LHC has incurred substantial damages well in excess of this Court's jurisdictional minimum and is at risk of further claimed liability.

WHEREFORE, LHC prays for judgment against Carter Verplanck in an amount to be proven at trial for all damages suffered by reason of Carter Verplanck's breach of its warranty obligations, together with interest thereon at the highest rate allowed by law, and such other and further relief as the Court deems appropriate.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

45. LHC repeats and realleges each and every allegation of Paragraphs 1 through 29 above, as if set forth herein.

46. As a supplier of water pumps and other specialty equipment, Carter Verplanck warranted that its vertical turbine pumps for both the membrane plant and repump stations as supplied were fit for their intended purpose.

47. At the time the pumps were sold, Carter Verplanck had reason to know the particular purpose for which the pumps were sold and would be used. When LHC acquired the pumps for the Project, it relied on the skill and judgment of Carter Verplanck in supplying vertical turbine pumps for both the membrane plant and repump stations that would conform with the technical requirements and specifications of the Project.

48. As a direct and proximate result of Carter Verplanck's breach of its implied warranty of fitness for a particular purpose, LHC incurred substantial damages well in excess of this Court's jurisdictional minimum and is at risk of further claimed liability.

WHEREFORE, LHC prays for judgment against Carter Verplanck in an amount to be proven at trial for all damages suffered by reason of Carter Verplanck's breach of its warranty obligations, together with interest thereon at the highest rate allowed by law, and such other and further relief as the Court deems appropriate.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

49. LHC repeats and realleges each and every allegation of Paragraphs 1 through 29 above, as if set forth herein.

50. Carter Verplanck is a merchant in the business of selling water pumps and other specialty equipment to consumers, including LHC. Carter Verplanck sold the Vertical Turbine Pumps, Horizontal Split Case Pumps, and Variable Frequency Drives as fit for the ordinary purpose for which such goods are used.

51. LHC notified Carter Verplanck of its breach of the implied warranty of merchantability upon being informed that the provided pumps failed performance tests and failed to conform to Project specifications.

52. As a direct and proximate result of Carter Verplanck's breach of its implied warranty of merchantability, LHC incurred substantial damages well in excess of this Court's jurisdictional minimum and is at risk of further claimed liability.

WHEREFORE, LHC respectfully requests that the court enter a judgment in its favor and against Carter Verplanck for all damages suffered by reason of Carter Verplanck's breach of its warranty obligations; its attorneys' fees and costs associated with this action; prejudgment interest; and such other relief as may be just and proper.

## COUNT V
## DECLARATORY JUDGMENT

53. LHC repeats and realleges each and every allegation of Paragraphs 1 through 29 above, as if set forth herein.

54. This is a cause of action for declaratory relief under 28 U.S.C. §§ 2201 and 2202.

55. After the pumps Carter Verplanck supplied failed the requisite vibration tests and SUA would not accept them as a result, LHC provided notice to Carter Verplanck and seasonably rejected the non-conforming goods.

56. The installation, testing, and acceptance of the Carter Verplanck pumps were on the Project's critical path.

57. Carter Verplanck's supplying of non-conforming pumps significantly delayed the Project, including, but not limited to, the awarding of substantial completion for the membrane treatment plant.

58. The delay caused by the non-conforming pumps resulted in delayed completion of the repump stations, which further impacted and delayed the entire Project.

59. In addition to the direct damages and increased costs sustained by LHC as a result of the non-conforming pumps, SUA alleges substantial damages attributable to the delay in the Project's completion date, and it has asserted that LHC must pay delay-based damages as a result.

60. LHC has demanded Carter Verplanck pay for and absolve Layne of liability for any and all damages caused by Carter Verplanck's breach. To date, Carter Verplanck has failed to affirm its responsibilities or compensate Layne.

61. LHC seeks a declaration of the parties' rights under their contract and a determination of Carter Verplanck's responsibility to Layne and liability for damages incurred as a result of the delay caused by its non-conforming pumps.

62. There is a substantial and continuing justiciable controversy between LHC and Carter Verplanck as to who is the responsible party liable for delay and direct damages claims assessed to date and continuing claims as the Project nears completion.

WHEREFORE, LHC respectfully requests entry of a Judgment declaring that:

A. Carter Verplanck breached the parties' Purchase Order by providing non-conforming pumps;

B. Carter Verplanck is solely responsible to pay all damages incurred by LHC as a result of Carter Verplanck's breach;

C. Carter Verplanck is solely liable for all further penalties assessed and damages LHC incurs as a result of delays caused by Carter Verplanck's breach;

D. Carter Verplanck is liable for LHC's attorneys' fees, costs and expenses incurred in bringing the instant action; and

E. LHC is entitled to any further and additional relief as the Court deems just.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Layne demands trial by jury on all issues so triable.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

Dated: April 19, 2016

BY:   s/Michael A. Holt
Michael A. Holt
Florida Bar No.: 91156
mholt@shb.com
201 Biscayne Boulevard, Suite 3200
Miami, Florida  33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Michael S. Cargnel*
mcargnel@shb.com
Richard F. Shearer*
rshearer@shb.com

2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
*Attorneys for Layne Heavy Civil, Inc.*

\**Pro hac vice* motions forthcoming